1  JINA L. CHOI (NY Bar No. 2699718)
   JOHN S. YUN (CA Bar No. 112260)
2    yuns@sec.gov
   SHEILA E. O'CALLAGHAN (CA Bar No. 131032)
3    ocallaghans@sec.gov
4  ALICE L. JENSEN (CA Bar No. 203327)
     jensena@sec.gov
5
   Attorneys for Plaintiff
6  SECURITIES AND EXCHANGE COMMISSION
   44 Montgomery Street, Suite 2800
7  San Francisco, CA 94104
   Phone (415) 705-2500
8  Fax (415) 705-2501
9
                   UNITED STATES DISTRICT COURT
10
                 NORTHERN DISTRICT OF CALIFORNIA
11
                    SAN FRANCISCO DIVISION
12

13
   SECURITIES AND EXCHANGE COMMISSION,    **Case No.**
14
            Plaintiff,
15
        v.
16                                         **COMPLAINT**
17 LUCA INTERNATIONAL GROUP, LLC; LUCA
   RESOURCES GROUP, LLC; LUCA ENERGY
18 FUND, LLC; ENTHOLPY EMC, INC.;
   BINGQING YANG; LEI (LILY) LEI; ANTHONY
19 V. POLLACE; and YONG (MICHAEL) CHEN,

20          Defendants, and

21 LUCA OPERATION, LLC; LUCA BARNETT
22 SHALE JOINT VENTURE; LUCA TO-KALON
   ENERGY, LLC; LUCA OIL, LLC; LUCA I,
23 LIMITED PARTNERSHIP; LUCA OIL II JOINT
   VENTURE; J&Q INT'L TRADING, INC.;
24 SKYLINE TRADING, LLC; and XIANG LONG
   ZHOU,
25
26          Relief Defendants.

27
       Plaintiff Securities and Exchange Commission ("Commission") alleges:
28

**SUMMARY OF THE ACTION**

1.      This litigation arises from a $68 million affinity fraud orchestrated by defendant Bingqing Yang ("Yang") through her wholly-owned management companies, defendants Luca International Group, LLC, Luca Resources Group, LLC and Luca Energy Fund, LLC (together, the "Luca Managers").  From 2007 until at least 2014, Yang, her chief fundraiser defendant Lei (Lily) Lei, and the Luca Managers engaged in a fraudulent scheme targeting the Chinese American community as well as investors in Asia to invest in the unregistered offerings of a series of investment funds—relief defendants Luca Barnett Shale Joint Venture, Luca Oil, LLC, Luca To-Kalon Energy, LLC, Luca I Limited Partnership, and Luca Oil II Joint Venture (together, the "Luca Funds")—controlled by Yang and the Luca Managers.

2.      Yang and Lei represented to investors that their money would be invested in oil and gas drilling operations, that they could expect annual rates of return of 20-30%, and that their investments were risk free.  They guaranteed 12-15% returns to some investors.

3.      In reality, Yang, the Luca Managers and Lei deceived investors in the Luca Funds by misrepresenting that their operations were successful and projecting outsized investment returns, all the while knowing that the operations were losing millions of dollars and that the enterprise was sinking under a mountain of debt.

4.      To prevent the scheme from collapsing, Yang comingled investor funds and used new investor money to continue making sham profit payments to earlier investors, while diverting millions of dollars for personal and undisclosed uses, including the purchase of a $2.5 million home in an exclusive gated community in Fremont, California, pool and gardening services, a family vacation to Hawaii and a golf junket.  Luca International's former CFO, defendant Anthony Pollace, played a smaller role in the fraud but continued to solicit investors even after he was aware that the Luca Funds were not properly accounting for their expenses, that Yang was comingling investor money and that the wells were producing very little oil and gas.

5.      From October 2011 to March 2014, Yang, Lei and Luca International targeted Chinese citizens who sought permanent U.S. residence through the EB-5 Immigrant Investor Pilot Program, which provides a method for foreign investors to obtain a green card by meeting certain

U.S. investment requirements, to invest in the Luca I Limited Partnership. Yang, Lei and Luca International raised approximately $8 million from EB-5 investors purportedly to finance jobs and development costs for eight oil-and-gas drilling projects, through a loan to relief defendant Luca Operation, LLC, another entity controlled and owned by Yang. Yang told these investors that the loan they were making was fully secured, all the while knowing that Luca Operation was hopelessly in debt and, contrary to the rosy representations Yang made to investors, had no realistic possibility of ever repaying the loan.

6.       Defendants Yang, Lei, and the Luca Managers violated the antifraud provisions of Section 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)] and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5] by making material misstatements and engaging in a fraudulent scheme, and defendant Pollace violated the antifraud provisions of Section 17(a)(3) of the Securities Act [15 U.S.C. § 77q(a)(3)], while offering and selling interests in the Luca Funds.

7.       By virtue of their management of the Luca Funds, defendants Yang and the Luca Managers are investment advisers and violated Sections 206(1), 206(2) and 206(4) of the Investment Advisers Act of 1940 ("Advisers Act") [15 U.S.C. §§ 80b-6(1), 80b-6(2), and 80b-6(4)] and Rule 206(4)-8 thereunder [17 C.F.R. § 275.206(4)-8] by making material misrepresentations, engaging in a fraudulent scheme, and breaching their fiduciary duties to the Luca Funds.

8.       Defendants Yang, Lei, and Luca International violated the registration provisions of Sections 5(a) and 5(c) of the Securities Act through the unregistered offer and sale of securities issued by the Luca Funds, while Pollace violated Section 5(c) of the Securities Act through the unregistered offer of such securities [15 U.S.C. §§ 77e(a) and 77e(c)].

9.       Defendants Lei, Yong (Michael) Chen, and his company Entholpy EMC, Inc. violated Section 15(a) of the Exchange Act by receiving hundreds of thousands of dollars in commissions for soliciting investments in the Luca Funds without being registered as broker-dealers, or persons associated with a broker-dealer, as required by the federal securities laws [15 U.S.C. § 78o(a)].

**JURISDICTION AND VENUE**

10.     The Commission brings this action pursuant to Sections 20(b), 20(d), and 22(a) of the Securities Act [15 U.S.C. §§ 77t(b), 77t(d), and 77v(a)], Sections 21(d), 21(e), and 27 of the Exchange Act [15 U.S.C. §§ 78u(d),  78u(e), and 78aa], and Section 209(d) of the Advisers Act [15 U.S.C. § 80b-9(d)].  This Court has jurisdiction over this action pursuant to Sections 20(b), 20(d)(1), and 22(a) of the Securities Act [15 U.S.C. §§ 77t(b), 77t(d)(1), and 77v(a)], Sections 21(d), 21(e), and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e), and 78aa], and Sections 209(d), 209(e), and 214 of the Advisers Act  [15 U.S.C. §§ 80b-9(d), 80b-9(e), and 80b-14]. Defendants, directly or indirectly, made use of the means and instrumentalities of interstate commerce or of the mails in connection with the acts, transactions, practices, and courses of business alleged in this Complaint.

11.     Venue is proper in this District pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and Section 27(a) of the Exchange Act [15 U.S.C. § 78aa(a)].  During the period described in this Complaint, Luca International, Luca Energy, and Luca Operation have maintained their principal places of business in Fremont, California, and Entholpy maintains its principal place of business in Santa Clara, California, in this District.  Defendants Yang, Pollace, and Chen also reside in this District.  In addition, acts, practices, and courses of business that form the basis for the violations alleged in this Complaint occurred in this District.  Under Civil Local Rule 3-2(d), this civil action should be assigned to the San Francisco or Oakland Division because a substantial part of the events or omissions which give rise to the claims alleged herein occurred in Alameda County.

**DEFENDANTS**

12.     **Bingqing Yang**, age 44 of Fremont, California, is the founder, Chief Executive Officer and President of Luca International Group, LLC.  Yang founded and controls each of the Luca Managers and the relief defendants Luca Funds, as well as relief defendant Luca Operation. Yang exercised sole control over the finances, managed the operations, and supervised the employees of the Luca Managers and Luca Funds, as well as Luca Operation.   Yang is a Chinese citizen and permanent resident of the United States.  During sworn testimony before the staff of the Commission in the investigation preceding the filing of this case, Yang asserted her Fifth

Amendment privilege against self-incrimination in response to questions about her involvement with each Luca entity.

13.    **Lei ("Lily") Lei**, age 34 of Monterey Park, California, is the former Vice President of Business Development of Luca International Group, LLC.  Other than Yang, Lei was the principal salesperson responsible for selling interests in the Luca Funds.  Lei is a Chinese citizen and permanent United States resident.  During sworn testimony before the staff of the Commission in the investigation preceding the filing of this case, Lei asserted her Fifth Amendment privilege against self-incrimination in response to questions about her involvement with any Luca entity.

14.    **Anthony Pollace**, age 79 of Saratoga, California, was the Chief Financial Officer of Luca International from August 2011 to May 2013.  Pollace was previously a financial consultant, chief financial officer and vice president of finance for several small privately-held companies.

15.    **Luca Managers**

(a)    **Luca International Group, LLC** ("Luca International") is a California limited liability company organized in 2005 with its principal place of business in Fremont, California.  Luca International is owned and controlled by Yang and functioned as an umbrella organization for all of the Luca Managers and Luca Funds, issuing marketing materials and advertisements.  Luca International is also the Managing General Partner of relief defendant Luca Barnett Venture, and claims to provide management services including the identification of oil and gas development prospects in exchange for management fees.

(b)    **Luca Resources Group, LLC** ("Luca Resources") is a Delaware limited liability company organized in 2011 with its principal place of business in Houston, Texas.  Luca Resources is owned and controlled by Yang.  Luca Resources serves as the manager of relief defendants Luca Oil, Luca To-Kalon, and Luca Oil II and claims to provide management services including the identification of oil and gas development prospects in exchange for management fees.

(c)    **Luca Energy Fund, LLC** ("Luca Energy") is a Texas limited liability company organized in 2010 with its principal place of business in Fremont, California.  Luca Energy is owned and controlled by Yang.  Luca Energy serves as the general partner of relief defendant Luca I and claims to control all of that partnership's day-to-day operations, management

1    and actions in exchange for management fees.

2    16.    **Yong ("Michael") Chen**, age 51 of Sunnyvale, California, is the principal and

3    owner of Entholpy. Chen is a financial aid consultant and tax planner who solicited investors for

4    Luca Funds through Entholpy from 2009 to 2013. Chen previously held securities licenses and was

5    associated with a registered broker-dealer from June 2010 until February 2011, but was never

6    associated with a registered broker-dealer in connection with his solicitation of investors for the

7    Luca Funds. In 2012, Chen was fined $5,000 by the Financial Industry Regulatory Authority

8    ("FINRA") and suspended from associating with any FINRA member for two months for engaging

9    in unauthorized outside business activity, including his activity through Entholpy.

10    17.    **Entholpy, EMC, Inc. d/b/a Mastermind College Funding** ("Entholpy") is a

11    California corporation with its principal place of business in Santa Clara, California that provides

12    advice on financial planning for college. Entholpy is owned and controlled by Chen and has never

13    been registered with the Commission in any capacity.

14    <u>**RELIEF DEFENDANTS**</u>

15    18.    The following individuals and entities are named as Relief Defendants in this action

16    for the purpose of assuring complete relief. Each received investor money or property that was

17    obtained in violation of the federal securities laws.

18    19.    **Luca Operation, LLC** ("Luca Operation") is a Louisiana limited liability company

19    organized in 2011 with principal places of business in Fremont, California and Lafayette, Louisiana.

20    Luca Operation is owned and controlled by Yang. Luca Operation often held legal title to the oil

21    and gas interests in which the Luca Funds supposedly invested. Luca Operation also typically

22    served as the holder of various bank accounts through which investor proceeds, investment receipts,

23    and expense payments passed. Luca I had a first priority lien upon the assets of Luca Operation, but

24    Yang pledged those same assets to other purported lenders.

25    20.    **Luca Funds**: Yang created the Luca Funds purportedly to invest in oil and gas

26    drilling projects. Although each Luca Fund was established as a separate legal entity, Yang

27    comingled investor funds among entities without regard for corporate forms.

28    (a)    **Luca Barnett Shale Joint Venture** ("Luca Barnett Venture") is a California

Joint Venture managed by Luca International.  Between September 2007 and January 2010, approximately sixty investors in the United States, some of whom were unaccredited, invested about $2.4 million in Luca Barnett Venture.

(b)     **Luca Oil, LLC** ("Luca Oil") is a Texas limited liability company managed by Luca Resources.  Luca Oil is the successor entity of Luca Barnett Shale Resources LLC, which was formed as a Texas limited liability company in August 2008 and managed by Luca Resources.  "Luca Oil" refers to both Luca Barnett Shale Resources LLC and the surviving Luca Oil entity, into which Luca Barnett Shale Resources LLC was merged in May 2011.  From September 2008 to December 2012, approximately 120 investors in the United States and Japan (including some through pooled offshore entities), some of whom were unaccredited, invested about $41 million in Luca Oil.

(c)     **Luca To-Kalon Energy, LLC** ("Luca To-Kalon") is a Texas limited liability company managed by Luca Resources.  Between December 2011 and December 2013, approximately 400 investors in Japan invested about $9 million in Luca To-Kalon through a pooled offshore entity.

(d)     **Luca I, LP** ("Luca I") is a Louisiana limited partnership managed by Luca Energy.  Between October 2011 and March 2014, approximately twenty investors in China invested about $8 million in Luca I.  The investments were part of an EB-5 immigration visa program, which provides a method for foreign nationals to obtain a green card by meeting certain investment requirements.  To obtain the visa, investors had to make a qualified minimum $500,000 investment that would generate at least ten new jobs in the United States.

(e)     **Luca Oil II, LP** ("Luca Oil II") is a Texas General Partnership managed by Luca Resources.  Between December 2012 and January 2014, approximately 100 investors in the United States, some of whom were unaccredited, invested about $7.9 million in Luca Oil II.

21.     **J&Q Int'l Trading, Inc. d/b/a J&Q Imports** ("J&Q") is a California corporation with its principal place of business in Monterey Park, California that purports to be in the wholesale auto business.  J&Q and its owner Zhou received approximately $567,000 from Luca Operation to which they were not entitled.

22.     **Skyline Trading LLC** ("Skyline") is a Maryland limited liability company with its principal place of business in Rockville, Maryland that purports to be in the wholesale trading business.  Shortly after J&Q received $567,000 from Luca Operation, J&Q transferred approximately $360,000 to Skyline.  Around the same time, Skyline purchased three luxury vehicles for approximately $310,000.  Approximately $175,000 of the purchase price was paid directly by Luca Operation, to which Skyline was not entitled.

23.     **Xiang Long Zhou**, age 34, is Lei's spouse.  Zhou is a Chinese citizen residing in Monterey Park, California.  Zhou is the owner of J&Q.

**FACTS**

A.      **Yang, Lei and the Luca Managers Fraudulently Raised Over $68 Million from Investors**

24.     From September 2007 to March 2014, Yang, through the Luca Managers, and Lei, with the help of other defendants, illegally raised $68 million from investors in funds that they controlled purportedly to purchase interests in oil and gas ventures.  Yang and the Luca Managers targeted many of the investors through Chinese-language television, radio and newspaper advertisements and investment seminars.  Yang, through the Luca Managers, also targeted investors from Japan and China.

25.     The investments were structured as an opportunity to earn profits in one of five funds including relief defendants Luca Barnett Venture, Luca Oil, Luca To-Kalon, Luca I and Luca Oil II.  Yang, through the Luca Managers, made investment decisions for the Luca Funds and received compensation from the Luca Funds in return.

26.     Yang and Lei led investment seminars in which they represented that prospective investors could expect annual rates of return of 20-30%, monthly distributions, and that their principal would be returned to them in three to five years.  In at least one instance, in connection with an investment on or about June 28, 2012, Lei even guaranteed 12-15% returns in writing, stating "we promise a minimum annual return of 12% for the 1st anniversary and 15% for the 2nd anniversary.  We shall be responsible to make up the shortage for you in case you fail to reach the said return."  Emails between Yang and Lei show that they attempted to conceal these guarantees

1   from other employees of Luca International.

2       27.     During investment seminars, Yang, Lei and Luca International misrepresented that

3   the Luca Funds were profitable, when in reality they were losing millions of dollars from their oil

4   and gas investments, as described in Section C below.  Yang and Luca International paid monthly

5   revenue distributions to investors that Yang and Lei characterized as purported "returns on

6   investment."

7       28.     Despite raising $68 million purportedly to fund oil and gas operations, as recently as

8   March 16, 2015, the combined balance of the Luca Managers, Luca Operation and Luca Funds'

9   bank accounts was less than $12,000.  Although Yang made some oil and gas investments, she

10  misappropriated investor funds for personal purposes, misspent investor funds on a junket for

11  potential investors, and commingled investor funds among the Luca Funds.  Yang returned some of

12  the monies raised from newer investors to other investors as profits in Ponzi-like fashion.  In reality,

13  Luca International was a failing business and Yang had to raise new funds to keep the company

14  afloat.

15  **B.**      **Yang, Through the Luca Managers, Misappropriated and Used Investor Funds**
            **for Improper Purposes**

16

17      29.     Yang exercised her control over the Luca Managers and Luca Funds to

18  misappropriate millions of dollars of investors' money.  Yang and the Luca Managers promised

19  prospective investors, by way of written offering materials prepared for each of the Luca Funds, that

20  they would use proceeds to acquire, develop and operate oil and natural gas wells in specific places,

21  including Texas, Montana, North Dakota, onshore in the Gulf of Mexico and Louisiana.  Despite

22  these promises, Yang, through the Luca Managers, misappropriated investor funds and created

23  sham transactions to enrich herself, to purchase a home and to allow herself and her family to live a

24  lavish lifestyle.

25      Yang Transferred $1 Million to Herself as Sham "Trademark Licensing Fees"

26      30.     In a particularly egregious example of Yang's misappropriation, on or about March

27  21, 2012, Yang, through Luca Resources as manager for Luca Oil, transferred approximately $1

28  million from Luca Oil to Luca International, which she characterized in Luca International's books

and records as purported trademark licensing fees. On or about March 30, 2012, Yang transferred $950,000 of the $1 million to her personal bank account.

31.     However, in March 2012, Luca International had not registered any trademark logos. Furthermore, the logos lacked any genuine economic value to the Luca Funds. Rather, the characterization as trademark licensing fees served only to justify Yang's misappropriation of investor money.

32.     As late as a full year later, in or about March 2013, Yang was still having Luca International's in-house counsel draft trademark licensing agreements for the Luca Funds. Yang directed Pollace to sign the agreements on behalf of the Funds, and Yang backdated some of the agreements by as much as two years.

<u>Yang Used Investor Funds to Pay Personal Expenses</u>

33.     In or around June 2012, Yang misappropriated an additional approximately $2.4 million of investor funds. Yang used the funds to purchase a 5,600-square-foot residence in the Avalon Heights gated community of Fremont, California.

34.     On May 30, 2012, Yang asked Pollace by email how to borrow $2.5 million from Luca Operation to purchase a house. Pollace informed Yang that she should not borrow money from Luca Operation, and Yang told Pollace to disregard the request.

35.     Despite this, on June 4, 2012, Yang transferred $2,463,817 from Luca Operation to an account held in the name of Sansun Technology Ltd. ("Sansun"), a Chinese company controlled by her brother. A few days later, on June 7 and 8, 2012, Sansun wired $2,431,950 to an escrow company that Yang had arranged to handle the purchase of her house. To cover up her misappropriation of the $2.4 million, Yang falsely described in a June 4, 2012 email to Luca International's bookkeeper, and again in a June 5, 2012 "letter of intent" addressed to Yang's sister-in-law at Sansun, that the wire transfer to Sansun was for the purpose of making a deposit on an oil drilling rig in China.

36.     Yang misappropriated an additional $2 million of investor funds for a variety of personal expenses, but arranged to record these items on Luca International's books as a "loan to owner." Thus, in May 2011, Yang transferred $30,000 from Luca International's account to her

personal bank account to pay for her 2010 personal taxes.  In April 2012, Yang paid the United States Treasury approximately $20,000 from Luca International's account for her 2011 personal taxes.

37.     In 2012, Yang, through Luca Resources, used Luca Oil funds to pay for her children and a relative to travel to China and for the same relative's travel on three additional occasions, including a trip to Hawaii.  In 2011, Yang, through Luca International, used Luca Barnett Venture funds to pay for the travel of her children, brother and sister-in-law.  Additionally, in June 2012 Yang used money from the Luca Oil and Luca International accounts to pay for a family vacation to Hawaii.  Yang also used Luca International's account to pay for pool and gardening services and her homeowner's association dues from August 2012 through December 2014.

38.     By early 2012, Yang was specifically advised by the CFO, Pollace, that she should discontinue paying for personal expenses out of corporate accounts.  Even after the specific admonition, Yang continued to misuse investor money by using corporate accounts to pay personal expenses, including in 2012, private school contributions, in 2012 and 2013, martial arts, choir and music lessons for her children, and through 2014, the gardener, pool service and homeowner's association dues.

### Yang, Through the Luca Managers, Misused Investor Funds for a Marketing Junket

39.     The Luca Funds' offering materials which were issued by Yang through the Luca Managers, stated that investor money would be used for acquiring, developing and operating oil and natural gas wells, to pay legal expenses associated with the offerings, and to pay salaries associated with acquiring, developing and operating oil and gas investments in the United States.  In addition to misappropriating investor funds for personal purposes, Yang, through the Luca Managers, also spent investor funds for undisclosed purposes that were inconsistent with the uses of funds described in the offering materials.  For example, Yang used approximately $510,000 of investor funds to pay for a so-called "U.S. China Energy Summit," which was a 10-day, expenses-paid golf junket to Pebble Beach, California for potential investors from China in September 2012.  Costs for the Summit included a $200,000 speaking fee for a former President of the United States and lavish dinners.

40.     Personal expenses and marketing junkets were not appropriate uses of investor funds under any of the Luca Funds' private placement memoranda.

**C.     Yang, Lei and The Luca Managers Made False and Misleading Claims to Lure and Deceive Investors**

Yang, Lei and Luca International Made False and Misleading Statements Regarding Projected Returns and Risks

41.     From approximately September 2008 to January 2014, Yang, Lei and Luca International used false and misleading statements projecting rates of return on investment that were unfounded and contrary to actual operations in pitches to potential investors.  For instance, a Luca Oil brochure Yang and Lei used to solicit investors contained statements regarding "estimated 20-30% annual returns" and charts of "estimated income" showing cumulative returns of 407.29% over twenty years.

42.     In addition, a Luca Oil II brochure that Yang and Lei used to solicit investors from approximately December 2012 through January 2014 represented a "payback period" of "estimated 4 years," a ten-year total return of "2.6 times," and a ten-year internal rate of return of "23%."  Lei also cited false historical returns, telling at least one prospective investor in writing that the Luca Funds' returns have "always [been] between 15% to 20% annually."

43.     Compounding these extreme and unfounded claims regarding returns, during the spring of 2011, Yang solicited investments from Japanese investors using brochures and PowerPoints which falsely claimed there was "zero risk of losing entire principal" and that there was a "predictable return."  Lei made similar representations to prospective Chinese-American investors, one of whom emailed Lei and stated, "We are very interested in your project since you told me that there is 0% risk to join [it] and I trust you since we are all Chinese!"

44.     Yang also represented that the monthly distributions for Luca Oil and Luca To-Kalon would eventually increase to 2% of the principal invested.

45.     Yang and Lei knew or were reckless in not knowing that the representations in the PowerPoints, brochures and other offering documents about both returns and risks were materially false and misleading.  The estimated returns were not based on actual well results, but were based on unrealistic and unattainable assumptions.

46. First, those projections assumed that every well would be 100% successful, when in reality the Vice President of Exploration told Yang at least as early as January 2012 that most of the wells had a likelihood of success of less than 60%.

47. Second, the forecasts assumed that all wells would be drilled and producing in the first year, even though the Vice President of Exploration told Yang it would take longer to identify well sites, negotiate leases, and commence drilling and production. Yang was told by employees that the estimated returns were inaccurate, but she failed to lower them.

48. Yang, Lei and Pollace were aware that the wells were not performing as well as projected. In at least one instance on or about March 1, 2012, Lei advised Yang about how to conceal this information from new investors by delaying access to certain performance information for at least six months. On or about January 29, 2013, Pollace commented to Luca International's Vice President of Production that it appeared the Luca Funds were "in some bad properties."

49. Yang had final editorial control over these marketing brochures and PowerPoint presentations.

<u>Yang, Lei, and the Luca Managers Made False and Misleading Statements</u>
<u>Regarding the Luca Funds' Actual Profitability</u>

50. From at least April 2009 through January 2014, Yang, through Luca International, distributed monthly reports to investors in certain of the Luca Funds, purporting to detail the oil and gas production for each operating well and the gross oil and gas revenues received by the Luca Funds for the month. Yang also approved, and Luca International enclosed with each report, a payment purportedly representing the investor's pro rata net distribution – i.e., the supposed net profits. Several existing investors invested more money after receiving these monthly reports.

51. The monthly reports were materially false and misleading because the reports omitted any operating expenses incurred by the Funds. In reality, the costs of running the oil and gas drilling operations far exceeded the proceeds from the sales of oil and gas from the inception of the Luca Funds. Yang knew the distribution numbers on the reports and the monthly payments did not represent the profits of the business, because she comingled and used whatever money was available, including from operations and new money raised from investors in the Luca Funds, to

1   make monthly payments to previous investors and to pay for operating and overhead expenses for

2   the Luca Managers and Luca Funds. Pollace was aware that the Luca Funds were not properly

3   accounting for their expenses and that Yang was comingling investor money.

4       52.     A PowerPoint slide with a sample month's oil and gas revenue distributions was

5   shown to investors to provide the false impression that the Fund was making a positive net

6   distribution.

7       53.     Yang had final editorial control over the PowerPoint slide and monthly reports to

8   investors about the status of their investments.

9           Yang, Through the Luca Managers, Made False and Misleading Statements
            Regarding Well Reserves
10

11      54.     In addition to the false and misleading representations about profitability, Yang also

12  knowingly made false and misleading statements to investors about the amount of oil and gas

13  reserves in Luca's well prospects to lure investors to invest.

14      55.     The marketing brochures and monthly reports that Yang approved and distributed to

15  investors misrepresented that the well prospects contained millions of barrels in oil reserves and

16  billions of cubic feet in gas reserves. However, the term "reserves" is a term of art that requires a

17  petroleum engineer to certify that a well's petroleum quality meets certain criteria. Only three of

18  the Luca Funds' twenty oil and gas wells had reports estimating reserves. The remaining "reserve"

19  numbers were picked out of thin air. Yang was told by Luca International's former Vice President

20  of Production numerous times from April through November 2012 that use of the term "reserves"

21  was misleading and inaccurate, but Yang continued to use the term "reserves" improperly in

22  monthly investor reports through January 2014. As discussed above, several prospective and

23  existing investors invested or invested more money after receiving these marketing brochures and

24  monthly reports.

25          Yang and Luca Energy Falsely Promised the EB-5 Investors that Their Money
            Would Be Used to Make a Secured Loan
26

27      56.     From in or about October 2011 through March 2014, Yang, through Luca Energy,

28  and Lei used the Luca I offering to target Chinese citizens who desired to obtain permanent

residence in the United States through the EB-5 Visa Program.

57. Defendants Yang and Luca Energy recruited EB-5 investors through investment seminars in China, some of which Pollace attended. Lei also recruited EB-5 investors. They each distributed brochures or presented PowerPoints that contained projected rates of return that were unfounded and inconsistent with the actual performance of Luca's earliest funds, Luca Barnett Venture and Luca Oil.

58. Yang, through Luca Energy, and Lei represented that Luca I offered an investment opportunity to acquire EB-5 visas. The Luca I private placement memorandum represented that all of the investor proceeds, which ultimately totaled approximately $8 million, would be used to make a loan to Luca Operation and that this loan would finance development costs for eight oil and gas drilling projects. Luca Operation granted Luca I a security interest in Luca Operation's assets to assure repayment of the loan in five years. The loan and security agreement were signed by Yang as CEO of both Luca Operation and Luca I.

59. Yang, Lei and Luca Energy failed to tell Luca I's investors that Luca Operation at the time of the agreement was already hopelessly in debt due to overdue accounts payable and lacked the cash to pay.

60. In August 2013, while Yang, Lei and Luca Energy continued to raise money from new investors, the total amount of Luca Operation's accounts payable had grown to more than $11 million, most of which was more than ninety days delinquent, seriously undermining Luca Operation's ability to repay the loan from Luca I. Yang, Lei and Luca Energy did not disclose this fact to prospective investors in Luca I.

61. Also in August 2013, Yang further compounded the problem by borrowing approximately $12 million from a lender in Hong Kong at an interest rate of approximately 30%, and by making Luca Operation the guarantor of that loan's repayment.

**D.    The Luca Funds' Unregistered Securities Offerings**

62. Luca International, Yang and Lei offered and sold unregistered securities through investment seminars in Luca International's offices and hotel conference rooms in California and in China. Pollace offered to sell unregistered securities by distributing Luca International's marketing

materials primarily to institutional investors in the U.S.  Pollace knew the Luca Funds' wells were performing poorly when he met with and solicited institutional investors because he received information about low production of oil and gas from Luca International's former Vice President of Production.

63.     Chen is a financial aid consultant and tax planner who solicited investors for Luca International through his wholly-owned business Entholpy, which is not a registered broker-dealer. Chen was previously associated with a registered broker-dealer, but not in connection with his solicitation of investors for the Luca Funds.

64.     Chen conducted seminars at which he recommended investing in the Luca Funds for their tax deductibility, as a method for investors to lower adjusted gross income in order to qualify for college financial aid.  His presentations incorporated Luca International's charts showing projected returns that were materially misleading, as described above.

65.     Lei and Chen were two of the Luca Funds' most successful fundraisers, earning hundreds of thousands of dollars in commissions for recruiting investors for Luca, which typically represented between 6% and 11% of the amount invested.  Lei received approximately $436,000 and Chen received approximately $770,000 in transaction-based compensation.  Yang used other persons to raise money from investors in Japan.

66.     Yang did not file registration statements with the Commission for the offer or sale of any of the Luca Fund securities.  Luca Barnett Venture and Luca I filed Securities Act Forms D claiming exemptions from registration pursuant to Securities Act Rule 506.  Luca Oil filed a Securities Act Form D claiming exemptions from registration pursuant to Securities Act Rules 505 and 506.  Neither exemption applied to the Luca Funds' securities offerings because Yang, through Luca International and Luca Energy, used general solicitation in newspaper, television and radio advertisements to market the securities and invite the general public to investment seminars.

67.     Numerous investors in several of the Luca Funds were non-accredited, but the Luca Managers and Luca Funds never prepared or provided the required financial disclosure documents or audited financial statements to non-accredited investors.

68.     In fact, Yang and Lei told certain investors to indicate on the questionnaires that they

were accredited when they were not.

**E.    The Luca Funds and Luca Managers Are On the Verge of Collapse**

69.    In April 2014, Yang ceased making monthly payments to investors in the Luca Funds.  Instead Yang proposed to convert their interests into equity investments in a holding company known as Sinotex, claiming the company would become publicly traded.

70.    In July 2014, Yang sold for $8.5 million the well interests in a project called "Bull Moose" that was generating the highest levels of oil and gas production for the Luca Funds.  At the time of this sale, Luca Operation was the legal owner of the Bull Moose interests and according to representations in the Luca I private placement memorandum and the provisions of the loan and security agreement dated March 2, 2012, Luca I therefore had a security interest in the Bull Moose holdings.  None of the Bull Moose sale proceeds were used to pay Luca Funds' investors, as a whole, or to repay the Luca I loan that was secured by the Bull Moose interest.

71.    Instead, Yang used the $8.5 million in proceeds from the sale of the Bull Moose well to pay past due expenses for drilling operations, to pay debts to foreign lenders, to pay some investors who had sued Yang and Luca International, and to transfer money to the Luca Managers.  Yang also transferred approximately $567,000 to an account in the name of relief defendant J&Q, an entity owned by Lei's husband, relief defendant Zhou, between July 28 and August 18, 2014.  J&Q transferred approximately $357,000 to relief defendant Skyline between July 24 and September 30, 2014.  Skyline purchased three luxury vehicles for about $310,000 between August 11 and 13, 2014.  Approximately $175,000 of the purchase price for the vehicles was paid directly by Luca Operation.  Relief defendants Zhou, J&Q and Skyline did not perform any services for Luca that would have entitled them to compensation.

72.    Since the fall of 2014, Luca has been receiving only minimal amounts of revenue from the sale of oil and gas.  Some investors have attempted, without success, to redeem their investments in the Luca Funds.

**FIRST CLAIM FOR RELIEF**

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 by
Yang, Lei, Luca International, Luca Resources and Luca Energy)
(Securities Fraud)**

73.     Paragraph numbers 1 through 72 are re-alleged and incorporated herein by reference.

74.     Defendants Yang, Lei, Luca International, Luca Resources, and Luca Energy, by
engaging in the conduct set forth above, directly or indirectly, by use of means or instrumentalities
of interstate commerce, or of the mails, or of a facility of a national security exchange, with
scienter; employed devices, schemes, or artifices to defraud; and engaged in acts, practices, or
courses of business which operated or would operate as a fraud or deceit upon other persons, in
connection with the purchase or sale of securities, in violation of Section 10(b) of the Exchange Act
[15 U.S.C. § 78j(b)] and Rule 10b-5(a) and (c) thereunder [17 C.F.R. §§ 240.10b-5(a) and (c)], and
unless restrained and enjoined will continue to violate these provisions.

75.     Defendants Yang, Lei, and Luca International, by engaging in the conduct set forth
above, directly or indirectly, by use of means or instrumentalities of interstate commerce, or of the
mails, or of a facility of a national security exchange, with scienter made untrue statements of
material fact or omitted to state material facts necessary in order to make the statements made, in
light of the circumstances under which they were made, not misleading, in violation of Section
10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5(b) thereunder [17 C.F.R. §§
240.10b-5(b)], and unless restrained and enjoined will continue to violate these provisions.

**SECOND CLAIM FOR RELIEF**

**(Violations of Sections 17(a) of the Securities Act by
Yang, Lei, Luca International, Luca Resources and Luca Energy)
(Securities Fraud)**

76.     Paragraph numbers 1 through 72 are re-alleged and incorporated herein by reference.

77.     Defendants Yang, Lei, Luca International, Luca Resources, and Luca Energy, have,
by engaging in the conduct set forth above, directly or indirectly, in the offer or sale of securities, by
the use of means or instruments of transportation or communication in interstate commerce, or of
the mails:  (1) with scienter, employed devices, schemes, or artifices to defraud; (2) obtained money
or property by means of untrue statements of material fact or by omitting to state material facts

necessary in order to make statements made, in the light of the circumstances under which they were made, not misleading; and (3) engaged in transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon the purchasers of such securities.

78.     By reason of the foregoing, Defendants Yang, Lei, Luca International, Luca Resources, and Luca Energy, have directly or indirectly violated Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)], and unless restrained and enjoined will continue to violate these provisions.

### THIRD CLAIM FOR RELIEF

**(Violations of Section 17(a)(3) of the Securities Act by Pollace)**
**(Securities Fraud)**

79.     Paragraph numbers 1 through 72 are re-alleged and incorporated herein by reference.

80.     Defendant Pollace, has, by engaging in the conduct set forth above, directly or indirectly, in the offer or sale of securities, by the use of means or instruments of transportation or communication in interstate commerce, or of the mails, engaged in transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon the purchasers of such securities.

81.     By reason of the foregoing, Defendant Pollace has directly or indirectly violated Section 17(a)(3) of the Securities Act [15 U.S.C. § 77q(a)(3)], and unless restrained and enjoined will continue to violate this provision.

### FOURTH CLAIM FOR RELIEF

**(Violations of Sections 5(a) and (c) of the Securities Act by**
**Yang, Lei and Luca International)**
**(Unregistered Securities Offering)**

82.     Paragraph numbers 1 through 72 are re-alleged and incorporated herein by reference.

83.     Defendants Yang, Lei, and Luca International, by engaging in the conduct described above, directly or indirectly, made use of means or instruments or transportation or communication in interstate commerce or of the mails, to offer to sell or to sell securities, or to carry or cause such securities to be carried through the mails or in interstate commerce for the purpose of sale or for delivery after sale.

84.     No registration statement has been filed with the SEC or has been in effect with

1  respect to any of the offerings or securities alleged herein, and no exemption from registration

2  applies.

3    85.    By reason of the foregoing, Defendants Yang, Lei, and Luca International Group

4  have violated Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a) and 77e(c)], and

5  unless restrained and enjoined will continue to violate these provisions.

6                                  **FIFTH CLAIM FOR RELIEF**

7                  **(Violations of Section 5(c) of the Securities Act by Pollace)**
                            **(Unregistered Securities Offering)**
8

9    86.    Paragraph numbers 1 through 72 are re-alleged and incorporated herein by reference.

10    87.    Defendant Pollace, by engaging in the conduct described above, directly or

11  indirectly, made use of means or instruments or transportation or communication in interstate

12  commerce or of the mails, to offer to sell securities, or to carry or cause such securities to be carried

13  through the mails or in interstate commerce for the purpose of sale or for delivery after sale.

14    88.    No registration statement has been filed with the SEC or has been in effect with

15  respect to any of the offerings or securities alleged herein, and no exemption from registration

16  applies.

17    89.    By reason of the foregoing, Defendant Pollace has violated Section 5(c) of the

18  Securities Act [15 U.S.C. § 77e(c)], and unless restrained and enjoined will continue to violate this

19  provision.

20                                  **SIXTH CLAIM FOR RELIEF**

21              **(Violations of Sections 206(1) and 206(2) of the Advisers Act by**
               **Yang, Luca International, Luca Resources and Luca Energy)**
22                            **(Investment Adviser Fraud)**

23    90.    Paragraph numbers 1 through 72 are re-alleged and incorporated herein by reference.

24    91.    At all relevant times, Defendants Yang, Luca International, Luca Resources, and

25  Luca Energy were "investment advisers" within the meaning of Section 202(a)(11) of the Advisers

26  Act [15 U.S.C. § 80b-2(a)(11)]. Defendants Yang, Luca International, Luca Resources, and Luca

27  Energy each were in the business of providing investment advice concerning securities for

28  compensation. Defendant Yang was also an investment adviser due to her ownership, management

1  and control of Defendants Luca International, Luca Resources, and Luca Energy.

2      92.    As set forth above, Defendants Yang, Luca International, Luca Resources, and Luca

3  Energy defrauded their clients, the Luca Funds, by misappropriating money from their advisory

4  clients and engaging in self-dealing with their clients through a scheme to defraud and through

5  transactions, practices, and courses of business which operated as a fraud or deceit upon their

6  advisory clients.

7      93.    Defendants Yang, Luca International, Luca Resources, and Luca Energy, by use of

8  the mails or any means or instrumentality of interstate commerce, directly or indirectly, acting

9  intentionally, knowingly or recklessly: (a) have employed or are employing devices, schemes, or

10  artifices to defraud clients and/or potential clients; or (b) have engaged or are engaging in

11  transactions, practices, or courses of business which operate as a fraud or deceit upon a client or

12  prospective client.

13      94.    As a result, Defendants Yang, Luca International, Luca Resources, and Luca Energy

14  have violated Sections 206(1) and (2) of the Advisers Act [15 U.S.C. § 80b-6(1) and (2)], and

15  unless restrained and enjoined will continue to violate these provisions.

16                      **SEVENTH CLAIM FOR RELIEF**

17      **(Violations of Section 206(4) of the Advisers Act and Rule 206(4)-8 by**
       **Yang, Luca International, Luca Resources and Luca Energy)**
18                      **(Investment Adviser Fraud)**

19      95.    Paragraph numbers 1 through 72 are re-alleged and incorporated herein by reference.

20      96.    At all times relevant to this Complaint, Defendants Yang, Luca International, Luca

21  Resources, and Luca Energy acted as investment advisers to the Luca Funds, pooled investment

22  vehicles as defined in Rule 206(4)-8(b) [17 C.F.R. § 275.206(4)-8(b)].

23      97.    Defendants Yang, Luca International, Luca Resources, and Luca Energy, while

24  acting as investment advisers to pooled investment vehicles, by use of the mails, and the means and

25  instrumentalities of interstate commerce, directly or indirectly, engaged in acts, practices, or courses

26  of businesses which were fraudulent, deceptive or manipulative.  Defendants Yang, Luca

27  International, Luca Resources, and Luca Energy made untrue statements of a material fact or

28  omitted to state a material fact necessary to make the statements made, in the light of the

circumstances under which they were made, not misleading, to investors or prospective investors in the pooled investment vehicles, and otherwise engaged in acts, practices, or courses of businesses that were fraudulent, deceptive or manipulative with respect to investors or prospective investors in the pooled investment vehicles.

98.   By engaging in the conduct described above, Defendants Yang, Luca International, Luca Resources, and Luca Energy have violated Section 206(4) of the Advisers Act [15 U.S.C. § 80b-6(4)] and Rule 206(4)-8 thereunder [17 C.F.R. § 275.206(4)-8], and unless restrained and enjoined will continue to violate these provisions.

### EIGHTH CLAIM FOR RELIEF

**(Violations of Section 15(a) of the Exchange Act by Lei, Chen and Entholpy)**
**(Unregistered Broker-Dealers)**

99.   Paragraph numbers 1 through 72 are re-alleged and incorporated herein by reference.

100.   Defendants Lei, Chen and Entholpy, directly or indirectly, through use of the means or instruments of transportation or communication in interstate commerce or the mails, acted as a broker and/or effected transactions in, and induced or attempted to induce the purchase or sale of, securities (other than an exempted security or commercial paper, bankers' acceptances or commercial bills) without being registered with the Commission in accordance with Section 15(b) of the Exchange Act [15 U.S.C. § 78o(b)].

101.   By reason of the foregoing, defendants Lei, Chen and Entholpy violated Section 15(a) of the Exchange Act [15 U.S.C. § 78o(a)], and unless restrained and enjoined will continue to violate this provision.

### NINTH CLAIM FOR RELIEF

**(Relief Defendants)**

102.   Paragraph numbers 1 through 72 are re-alleged and incorporated herein by reference.

103.   Relief Defendants Luca Operation and the Luca Funds received and may continue to hold investor funds that were obtained through violations of the federal securities laws, as alleged above.

104.   As set forth above, in or around July and August 2014, Yang transferred

1 | approximately $567,000 to the accounts of Relief Defendant Zhou and his company Relief

2 | Defendant J&Q.

3 |     105.   Shortly after receiving the funds, J&Q transferred approximately $360,000 to Relief

4 | Defendant Skyline.  Around the same time Skyline purchased three luxury vehicles for

5 | approximately $310,000.  Approximately $175,000 of the purchase price for the vehicles was paid

6 | directly by Luca Operation.

7 |     106.   Defendant Yang has transferred to Relief Defendants Zhou and J&Q money derived

8 | from the Defendants' violations described in this Complaint, to which Relief Defendants Zhou and

9 | J&Q have no legitimate claim.

10 |     107.   Defendant Yang and Relief Defendant J&Q have transferred to Relief Defendant

11 | Skyline money derived from the Defendants' violations described in this Complaint, to which

12 | Relief Defendant Skyline has no legitimate claim.

13 | **PRAYER FOR RELIEF**

14 |     WHEREFORE, the Commission respectfully requests that the Court:

15 | I.

16 |     Enjoin Defendants Luca International, Luca Resources, Luca Energy, Yang and Lei,

17 | preliminarily and permanently from directly or indirectly violating Section 17(a) of the Securities

18 | Act [15 U.S.C. § 77q(a)], and Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)], and Rule

19 | 10b-5 thereunder [17 C.F.R. § 240.10b-5], and Defendant Pollace permanently from directly or

20 | indirectly violating Section 17(a)(3) of the Securities Act [15 U.S.C. § 77q(a)(3)].

21 | II.

22 |     Enjoin Defendants Luca International, Yang and Lei, preliminarily and permanently from

23 | directly or indirectly violating Sections 5(a) and (c) of the Securities Act [15 U.S.C. §§ 77e(a) and

24 | 77e(c)], and Defendant Pollace permanently from directly or indirectly violating Section 5(c) of the

25 | Securities Act [15 U.S.C. § 77e(c)].

26 | III.

27 |     Enjoin Defendants Luca International, Luca Resources, Luca Energy, and Yang,

28 | preliminarily and permanently from directly or indirectly violating Sections 206(1), 206(2) and

1   206(4) of the Advisers Act [15 U.S.C. §§ 80b-6(1), 80b-6(2), and 80b-6(4)] and Rule 206(4)-8

2   thereunder [17 C.F.R. § 275.206(4)-8].

3                                            IV.

4          Enjoin Defendants Lei, Chen and Entholpy permanently from directly or indirectly violating

5   Section 15(a) of the Exchange Act [15 U.S.C. § 78o(a)].

6                                            V.

7          Enter an Order preliminarily and permanently enjoining Defendants Luca International,

8   Luca Resources, Luca Energy, Yang and Lei from directly or indirectly participating in the

9   issuance, offer, or sale of any security of any entity controlled by, or under joint control with, any of

10  them, including but not limited to securities issued by Sinotex, as well as the acceptance of any

11  money or anything of value by any Defendant for such securities.

12                                           VI.

13         Enter an Order preliminarily and permanently enjoining Defendants Luca International,

14  Luca Resources, Luca Energy, Yang and Lei from directly or indirectly soliciting any person or

15  entity to purchase or sell any security.

16                                           VII.

17         Enter an Order appointing a receiver over Defendants Luca International, Luca Resources,

18  Luca Energy, and Relief Defendants Luca Operation and the Luca Funds to stop the fraud, marshal

19  and preserve all remaining assets, clarify the entities' financial affairs, and investigate claims

20  against Yang, Lei and other persons.

21                                           VIII.

22         Enter an Order freezing the assets pending final judgment of Defendants Luca International,

23  Luca Resources, Luca Energy, Yang, Lei, and of Relief Defendants Luca Operation, the Luca

24  Funds, J&Q, Skyline, and Zhou in specified assets or accounts obtained through the violations

25  alleged herein, including the requirement that these Defendants and Relief Defendants repatriate all

26  funds obtained through the violations that were sent to, or deposited into, any offshore accounts.

27                                           IX.

28         Enter an Order prohibiting Defendants Luca International, Luca Resources, Luca Energy,

1   Yang, Lei, and the Relief Defendants from destroying documents and permitting expedited

2   discovery; and requiring accountings from Defendants Luca International, Luca Resources, and

3   Luca Energy.

X.

5       Enter an order barring Defendant Yang from serving as an officer or director of a public

6   company pursuant to Section 20(e) of the Securities Act [15 § U.S.C. 77t(e)] and Section 21(d)(2)

7   of the Exchange Act [15 U.S.C. § 78u(d)(2)].

XI.

9       Enter an Order requiring Defendants Luca International, Luca Resources, Luca Energy,

10  Yang, Lei, Chen, Entholpy and the Relief Defendants to disgorge their ill-gotten gains according to

11  proof, plus prejudgment interest thereon.

XII.

13      Enter an Order requiring Defendants Luca International, Luca Resources, Luca Energy,

14  Yang, Lei, Pollace, Chen and Entholpy to pay civil penalties pursuant to Section 20(d) of the

15  Securities Act [15 U.S.C. § 77t(d)] and Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)].

XIII.

17      Retain jurisdiction of this action in accordance with the principles of equity and the Federal

18  Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that

19  may be entered, or to entertain any suitable application or motion for additional relief within the

20  jurisdiction of this Court.

COMPLAINT

XIV.

Grant such other and further relief as this Court may determine to be just, equitable, and necessary.

Dated:  July 6, 2015

Respectfully submitted,

ALICE L. JENSEN
Attorney for Plaintiff
SECURITIES AND EXCHANGE
COMMISSION